Commonwealth *v.* Porter, Appellant.

Submitted March 22, 1974.  Before WATKINS, P. J.,
JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and
SPAETH, JJ.

316

*Harold L. Randolph,* and *Nix & Randolph,* for appellant.

*David Richman,* Assistant District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY PRICE, J., June 21, 1974:

On November 3, 1972, the appellant, Samuel Porter, was convicted of Aggravated Robbery, Aggravated Assault and Battery, Burglary of a Motor Vehicle, and Violation of the Uniform Firearms Act by the lower court sitting without a jury. Post-trial motions for arrest of judgment and new trial were denied, and appellant was sentenced on March 2, 1973, to concurrent terms of imprisonment of 1 to 3 years for burglary; 2½ to 10 years for robbery; 1 to 2 years for the firearm violation. Sentence was suspended on the assault and battery conviction.

The appellant raises three assignments of error: (1) that the evidence was insufficient to return a guilty verdict, (2) that the seizure of appellant's blood violated his Fourth Amendment rights, and (3) that the court below erred in admitting evidence of blood typing. A review of the record convinces us that the trial court did not so err, and accordingly, the judgment of sentence will be affirmed.

Viewing the evidence in a light most favorable to the Commonwealth, *Commonwealth v. Portalatin*, 223 Pa. Superior Ct. 33, 297 A. 2d 144 (1972), the testimony established the following facts: On February 15, 1972, at 2:00 p.m., a meat delivery truck driver became the victim of a robbery at gunpoint. The complainant, Brooks McCollough, had just delivered a load of spareribs to a barbecue restaurant and had received a brown paper bag containing approximately $700.00 as payment. Mr. McCollough then returned to the cargo section of his truck, to prepare for his next delivery.

As he was bent over in the front of the cargo section, with his back to the door, Mr. McCollough felt the truck shake and heard a voice say, "Hold it; this is a stick-up". Mr. McCollough was frisked and the brown paper bag containing the cash payment was stolen from his hip pocket. Several seconds elapsed, when Mr. McCollough heard a shot, felt pellets strike his left hand, and heard footsteps running past the truck.

The complainant then turned to face the door and saw a double-barrelled, sawed-off shotgun lying on the floor. He stepped outside and saw two men running away from the truck. He returned to the truck, where he noticed fresh blood—which had not been there before—on the floor and one wall. Mr. McCollough notified the police and later received treatment at the nearest hospital for superficial wounds. His hand was intact, and did not bleed profusely at any time.

While at the hospital, Mr. McCollough was interviewed by Detective Linso. The complainant described one of his attackers as a black man, about 6 feet tall, wearing a brown leather jacket. The other wore a black leather jacket.

Detective Linso then received instructions to go to Temple University Hospital to interview the victim of another shooting. This victim was Samuel Porter, the appellant herein. He had been admitted at approxi-

mately 2:30 p.m. for emergency treatment of severe gunshot wounds of the left hand. The detective testified that he saw appellant's hand, and observed that one of his fingers had been so severely injured that the bone was exposed at the second joint. The thumb and another finger were also badly mutilated.

Mr. Porter told the detective that he had been shot at about 2:10 p.m. by two men as he was walking on a street near the hospital, and that a passing motorist drove him to the hospital. The detective then went to the scene but could find no evidence of a shooting, nor any blood. Neighbors in that area said they had heard no shots.

The detective returned to the hospital to see Mr. Porter, and noticed a similarity between appellant and the man described by the complainant as one of the men who ran from the truck after the robbery. At that time, Detective Linso placed the appellant under arrest and gave him the *Miranda* warnings. On the table near appellant was a brown leather jacket which belonged to appellant, and which contained a brown paper bag.

The detective then left the hospital and returned to the scene of the truck robbery, where he took custody of the shotgun and inspected the truck. On the rear floor and one wall, he saw what appeared to be fresh drops of human blood. He took samples of these drops, which he submitted to the Police Chemical Laboratory for analysis. He also found particles of what seemed to be dark human flesh, and a fingertip, which he also submitted for analysis. He further noted that there were spots of blood on the ground beside the truck which trailed for quite a distance in the direction the robbers had run.

Chemical analysis confirmed that the flesh was in fact human and the blood was type "O" human blood. Neither the blood nor the flesh could have belonged to

the victim, as his hand was left intact after the shooting and bled very little.

On February 29, 1972, the appellant, who was confined to the Detention Ward of Philadelphia General Hospital, was subjected to a properly administered blood test pursuant to a search warrant. Subsequent typing of his blood revealed that it was type "O".

The appellant's first allegation, that the evidence was insufficient to sustain the verdict, has no merit. The test of the sufficiency of the evidence regardless of whether it is direct or circumstantial is whether, accepting as true all the evidence and all reasonable inferences arising therefrom upon which, if believed, the fact finder could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime for which he was convicted. *Commonwealth v. Clark*, 454 Pa. 329, 311 A. 2d 910 (1973); *Commonwealth v. McFadden*, 448 Pa. 277, 292 A. 2d 324 (1972); *Commonwealth v. Chasten*, 443 Pa. 29, 275 A. 2d 305 (1971).

There is clearly enough circumstantial evidence in this case to substantiate the court's verdict beyond a reasonable doubt. The appellant suffered a shotgun injury which severed a portion of one finger and severely damaged two others, and was treated for this injury within one-half an hour after the complainant was robbed. Found in the complainant's truck was a human fingertip, with other particles of human flesh. The appellant's blood type and that of the robber matched. The appellant's description and that of the robber were similar, and appellant's jacket contained a brown paper bag like that which was stolen from the complainant.

The grant of a new trial on the ground that the verdict is against the weight of the evidence is committed to the sound discretion of the trial court, and will not be reversed on appeal in the absence of an abuse of dis-

cretion. *Commonwealth v. Zapata,* 447 Pa. 322, 327, 290 A. 2d 114, 117 (1972).

The matter of credibility was passed on by the trier of fact, as was the weight to be given the testimony. This finding of the judge, sitting without a jury, is supported by the record and is entitled to the same weight as a jury verdict. *Commonwealth v. Coe,* 226 Pa. Superior Ct. 594, 323 A. 2d 213 (1974); *Commonwealth ex rel. Epps v. Myers,* 197 Pa. Superior Ct. 145, 177 A. 2d 28 (1962).

Appellant next contends that the blood sample obtained from him pursuant to a valid search warrant violated his Fourth Amendment right to be protected against an unreasonable search and seizure. This issue was not properly preserved for appeal, as the appellant failed to move to suppress the evidence before trial. Such a failure is deemed a waiver of objections to the admissibility. Pa. R. Crim. P. 323; *Commonwealth v. Frye,* 433 Pa. 473, 252 A. 2d 580 (1969).

Appellant next contends that it was error to admit into evidence blood typing which proved that appellant's type and that of the blood taken from the scene were the same. Appellant asserts that such evidence was irrelevant to show that he had committed the crime, and is admissible only to corroborate other testimony which would indicate his presence at the scene. Appellant raises this issue because there was no positive eyewitness identification of the appellant as a participant in the robbery. The complainant, who had never seen the robber's face, could not positively identify the appellant. However, at trial, the complainant did indicate that appellant resembled the robber, and that the jacket appellant wore was the same as that which the robber wore.

Proof that a defendant shares a blood type with that of samples found at the scene of the crime is relevant and admissible when it corroborates independent facts

which show either that the person who committed the crime lost blood, or that the defendant was present at the scene of the crime. *Commonwealth v. Mussoline,* 429 Pa. 464, 468, 240 A. 2d 549, 551 (1968). *Cf. Commonwealth v. Statti,* 166 Pa. Superior Ct. 577, 584, 73 A. 2d 688, 692 (1950).

In the instant case, a positive identification was not necessary to sustain appellant's conviction. Blood, pieces of human flesh and a portion of a finger were found in the victim's truck, after the robbery, which had not been in the truck before the robber's gun discharged. Neither the blood, the flesh nor the finger were the victim's. These facts were established independently of any blood typing, as was the fact that within a half hour following the robbery, the appellant was treated for a gunshot wound which removed part of one finger and badly damaged two others.

Further circumstantial evidence which implicated the appellant's involvement in the robbery was brought out at trial by Detective Linso, who testified that when he interviewed appellant at Temple Hospital, he noticed that appellant had a brown leather jacket in his possession. Protruding from the pocket of his jacket was a brown paper bag of the size and type as that which contained the $700.00, and which was taken from Mr. McCollough during the robbery.

In addition to these established facts, the victim indicated that appellant resembled the robber and wore a jacket identical to the robber's. The blood-type evidence was properly used in the instant case to corroborate other physical evidence as to the appellant's whereabouts at the crucial time, as required by *Commonwealth v. Mussoline, supra.*

The "theme of guilt" in the instant case, flowed from the facts and circumstances proved, and was consistent with them all. *Commonwealth v. Simpson,* 436 Pa. 459, 260 A. 2d 751 (1970); *Commonwealth v. Clin-*

*ton,* 391 Pa. 212, 137 A. 2d 463 (1958). The circumstantial evidence found in this case is sufficient to sustain appellant's conviction.

Judgment of sentence is affirmed.