STATE of Missouri, Respondent,

v.

Charles ARNOLD, Appellant.

No. 59894.

Supreme Court of Missouri,
En Banc.

March 13, 1978.

Rehearing Denied June 15, 1978.

John B. Newberry, Springfield, for appellant.

John D. Ashcroft, Atty. Gen., William F. Arnet, Asst. Atty. Gen., Jefferson City, for respondent.

BARDGETT, Judge.

Appellant Charles Arnold was tried and convicted in the Circuit Court of Greene County, Missouri, of burglary and stealing. The court of appeals, Springfield district, reversed and remanded the case for a new trial. This court sustained respondent's application for transfer. Art. V, sec. 10, Mo. Const.

At 2:48 a.m. on the morning of January 13, 1975, officer Harold Wynn of the Springfield City Police Department observed a Pontiac automobile leaving the parking lot of the Glen Isle Shopping Center in Springfield, Missouri. No shops were open on the shopping center at that time. The automobile left the parking lot at a high rate of speed with its lights off. The lights were turned on about one-half block from the shopping center. Officer Wynn radioed headquarters that he was going to pursue the automobile and as he did so another police officer, Ronald Hardt, examined the stores in the shopping center. He found that the La Vogue Dress Shop had been broken into. When officer Wynn was advised of this a short time later he proceeded to stop the Pontiac. The doors of the dress shop had been checked by officer Hardt at 2:03 a.m., 45 minutes prior to Wynn's initial observation of the Pontiac and found to be secure.

Three persons were in the front seat of the Pontiac when officer Wynn stopped it. Appellant was on the right-hand side of the automobile next to the door. The occupants, including appellant, were placed under arrest. Officer Wynn observed that the entire automobile was dust covered except for the upper portion of the trunk and the portion around the locking mechanism where several handprints were outlined in the dust.

After the occupants had been taken from the scene, officer Wynn made an "inventory search" of the automobile. As he climbed in the back seat, the bottom part rotated forward allowing the back part to slide down. A gap was created between the seat and the trunk large enough to permit officer Wynn to peer into the trunk with his flashlight. Upon doing so he observed a large pile of clothing. The automobile was then taken into police custody.

A warrant was applied for based on the reports of officers Wynn and Hardt. A search of the trunk disclosed 72 items of ladies' apparel, all of which were positively identified by Leopold Marin, owner of the La Vogue Dress Shop, as items taken from the store. The stolen merchandise consisted of coats, pantsuits and slacks. The trunk also contained a box of "craftsman tools," a pry bar, and a tire tool. Prior to the search the trunk had remained locked.

Appellant raises several objections to the trial court's failure to sustain his motion to suppress. Appellant contends that evidence, i. e., the 72 items of clothing, was unlawfully seized for three reasons: (1) there was no probable cause for the arrest of appellant and therefore no lawful search of the automobile incident to the arrest; (2) at the time of the search appellant was no longer at or near the automobile; therefore, a warrantless search to protect evidence or officers from injury was not necessary; and (3) because the initial view of the evidence by officer Wynn was part of an unreasonable search, the subsequent warrant based upon what was seen in the first unreasonable search uncovered "fruit of the poisonous tree" which should have been suppressed.

It is unnecessary to consider these arguments because appellant lacks standing to raise objections to the search of the Pontiac in which he was a passenger. Possession at the time of the alleged wrongful search is not an element of the crimes for which appellant has been charged; therefore, he has no automatic standing to contest the search. Brown v. United States, 411 U.S. 223, 229, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); Jones v. United States, 362 U.S. 257, 263, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). Appellant has shown neither an ownership nor proprietary interest in the automobile. State v. McCarty, 460 S.W.2d 630, 635 (Mo. 1970). The law of Missouri has consistently been that a casual passenger has no standing to challenge a search of an automobile.

*State v. Thompson*, 490 S.W.2d 50 (Mo. 1973); *State v. Heitman*, 473 S.W.2d 722 (Mo.1971); *State v. Browner*, 514 S.W.2d 355 (Mo.App.1974). Appellant has failed to sustain his burden of proving that he has standing to raise questions as to the legality of the search of the automobile and seizure of its contents. *State v. Hornbeck*, 492 S.W.2d 802, 808 (Mo.1973).

Appellant's remaining point is that the trial court erred in not sustaining his motion for a directed verdict of acquittal at the close of the state's evidence. He argues that the mere fact of his presence in the automobile does not establish his possession of the stolen goods found therein nor his knowledge of their presence in the trunk.

Appellant argues that the evidence fails to show any form of "affirmative participation" on his part. *State v. Cobb*, 444 S.W.2d 408, 411–412 (Mo.banc 1969), and *State v. Irby*, 423 S.W.2d 800, 803 (Mo.1968), contain language to the effect that evidence of some form of affirmative participation is required. Both of those cases rely on *State v. Butler*, 310 S.W.2d 952 (Mo. 1958). In *Butler* the defendant was charged with breaking out of and escaping from the Dunklin county jail. Defendant objected to the sheriff's testimony that several bars were cut on the door of the jail on the grounds that no evidence was introduced to show defendant personally participated in the bar cutting. Other evidence showed that defendant was present at the time of the cutting and that he used the opening to make his escape. The court ruled the evidence competent and relevant on the issue of whether or not there had been a breaking of the jail. The court stated at 957:

" . . . In order to sustain a conviction for breaking the county jail and escaping it is not necessary to prove that the defendant personally cut the bars of the jail door. Defendant was charged singly and in joint concert with breaking the county jail and escaping. It is well settled that a party may be charged with the commission of the felony and be held under such charge for being present and participating in concert with the others in the commission of the crime, or for being present and aiding and assisting another in doing it. It is not necessary that he, personally, have done all the things which together make up the elements of the crime. *State v. Sheard*, Mo. Sup., 276 S.W.2d 196, certiorari denied, 352 U.S. 849, 77 S.Ct. 68, 1 L.Ed.2d 60; *State v. Whitaker*, Mo.Sup., 275 S.W.2d 316; *State v. Chernick*, Mo.Sup., 278 S.W.2d 741."

■ As the *Butler* case illustrates, the requirement of "affirmative participation" may be satisfied by inference and the evidence need not directly place the defendant in the act of committing the crime for which he is charged. This principle was recognized in *State v. Reed*, 453 S.W.2d 946 (Mo.1970), where the court held at 948–949: " . . . [I]t has also been held that presence, companionship and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred. As stated in *State v. Ramsey*, Mo., 368 S.W.2d 413, 417, 'Evidence fairly showing any form of affirmative participation in a crime is sufficient to support a conviction.' It is not necessary that the defendant personally did all of the things which together make up the elements of the crime. *State v. Butler*, Mo., 310 S.W.2d 952, 957." See also *State v. Corbin*, 186 S.W.2d 469, 471 (Mo.1945); *State v. Nichelson*, 546 S.W.2d 539, 543 (Mo. App.1977); *State v. Burks*, 521 S.W.2d 11, 15 (Mo.App.1975); *State v. Jackson*, 519 S.W.2d 551, 557 (Mo.App.1975); *State v. Johnson*, 510 S.W.2d 485, 489 (Mo.App. 1974).

The state's case was based on circumstantial evidence. In *State v. Franco*, 544 S.W.2d 533, 534–535 (Mo.banc 1976), this court considered the appropriate standard of appellate review in such a case:

" . . . First, the facts in evidence and all favorable inferences reasonably to be drawn therefrom must be considered in the light most favorable to the state and all evidence and inferences to the contrary must be disregarded. *State v. McGlathery*, 412 S.W.2d 445, 447 (Mo.1967); and *State v. Chase*, 444 S.W.2d 398 (Mo.banc 1969).

Second, when the state's case rests upon circumstantial evidence, 'the facts and circumstances must be consistent with each other and with the hypothesis of defendant's guilt, and they must be inconsistent with his innocence and exclude every reasonable hypothesis of his innocence.' *State v. Ramsey*, 368 S.W.2d 413, 416 (Mo.1963). See also: *State v. Thomas*, 452 S.W.2d 160, 162 (Mo.1970). Third, the prevailing circumstantial evidence rule, supra, is realistically tempered in its application since '[i]n a case involving circumstantial evidence the circumstances need not be absolutely conclusive of guilty, and they need not demonstrate impossibility of innocence[;] . . . the mere existence of other possible hypothesis is not enough to remove the case from the jury.' *State v. Thomas,* supra, at 162."

The evidence here would support the following findings: 1. Between 2:03 a.m. and 2:48 a.m., on January 13, 1975, forcible entry into the La Vogue Dress Shop in the Glen Isle Shopping Center, Springfield, Missouri, was gained through the front door and 72 items of ladies' apparel were taken therefrom. The fact that "some" quarters were found lying on the floor after the discovery of the burglary would support the inference that the burglars (or burglar) were in haste. 2. At 2:48 a.m., a Pontiac automobile driven by one Riley and occupied by appellant and another person made a hasty and suspicious departure from the vicinity of the dress shop. 3. The trunk of the Pontiac, which was locked, contained the stolen merchandise and some tools which could have been used to effect entry.

■ "An inference of guilt is permissible from the unexplained possession of property recently stolen in a burglary and the inference exists both as to the offense of burglary and of stealing." *State v. Cobb, supra,* at 414.

■ "The possession of recently stolen property which will support an inference of guilt may be a joint possession of the accused and others and such possession need not be separated from all possession by others." *Cobb* at 412.

■ "Stolen property found in an automobile in which the defendant is a passenger near the scene of a burglary is admissible against the defendant at his trial for burglary without showing that the defendant had any interest in or right to possession of the automobile." *Cobb* at 414.

■ "The bulk and nature of stolen property has a bearing on the manner in which it may be possessed." *Cobb* at 412. The court may also look to the circumstances surrounding a defendant's alleged participation in the burglary to determine the nature of the possession. See *State v. Schleicher*, 438 S.W.2d 258, 260–261 (Mo. 1969).

■ The facts of *State v. Cobb, supra,* are sufficiently analogous to the facts of this case to make it controlling. In *Cobb* this court upheld the conviction of defendant for burglary and stealing. In response to a burglary alarm, police were dispatched to a drugstore. When they arrived they saw a Pontiac with its lights off slowly leaving the parking lot. As they approached, the Pontiac accelerated and was driven rapidly from the parking lot. The Pontiac fishtailed, skidded into a ditch, and finally stalled in the middle of the highway. Defendant was a passenger in the right front seat. Fourteen bottles of prescription drugs, identified as those taken from the burglarized drugstore, were found in a cardboard box behind the right front seat, which seat was occupied by defendant.

It is argued that *Cobb* is distinguishable on two grounds. First, the defendant in *Cobb* gave a rather fanciful testimony that he was asleep during the burglary and the attempted getaway. But the jury obviously chose not to believe this testimony. Furthermore, in determining whether the evidence was sufficient to support the verdict, the court stated: ". . . [W]e must disregard entirely the testimony of Cobb and Greer [another occupant of the automobile] that Cobb was asleep at the time the burglary and stealing occurred." 444 S.W.2d at 412. In the present case, appellant did not testify. In light of what the court in

*Cobb* said, Cobb's testimony should be irrelevant.

The second basis of distinction is the fact that the stolen merchandise used to convict appellant was found in the locked trunk of the Pontiac. Is the fact that the stolen goods were locked in the trunk and not in the back seat of critical importance in this case? We think not. Here, the items stolen were 72 articles of ladies' apparel. Obviously, a burglar of any intelligence would want the stolen goods in the trunk rather than the back seat as in *Cobb*. The defendant in *Cobb*, sitting in the front seat, was not exercising any dominion or control over the stolen drugs. The circumstances leading to his arrest, rather than the place where the stolen drugs were found, were of critical importance in *Cobb*. The recent burglary, the suspicious nature of the automobile's departure from the vicinity of the crime, and the fact that the stolen goods were found in the automobile, all supported the inference that *Cobb* participated in the burglary and the conclusion that he possessed the stolen goods jointly with the other occupants. As the court in *Cobb* stated at 414:

"The evidence in the instant case is much stronger than in the case of *State v. Watson*, Mo., 350 S.W.2d 763, in that the defendant Cobb was shown to have been at the scene of the crime and had an opportunity to commit it in addition to being a passenger in the car transporting the stolen property."

The case at bar is similar to *Cobb* in each of these respects. Here, there is evidence of appellant's continuous presence in the automobile from the time it left the scene until the police pulled it over. This fact is of paramount importance in the present case. There is no doubt but that defendant was at the scene of the crime immediately after its commission. See *State v. Farmer*, 490 S.W.2d 72 (Mo.1973), where such continuity was not shown and for that reason the evidence was held insufficient to make a submissible case.

Appellant argues that the placement of the stolen drugs in *Cobb* under the bucket seat occupied by the defendant evinced his participation by moving his seat or momentarily leaving the automobile while the drugs were placed there. However, the court in *Cobb* found only that one of the front seats had to be moved to permit a person to leave or enter the back seat. It is entirely possible that whoever placed the box under the seat entered from the driver's side of the automobile and Cobb did not move at all. The court in *Cobb* did not base its decision on such an insignificant involvement as the moving of the defendant's bucket seat.

■ The mere presence at the scene of the crime, coupled with an opportunity to have committed it, will not suffice to support a conviction. *State v. Allen*, 420 S.W.2d 330, 333 (Mo.1967). It is also well settled that presence at the scene and flight therefrom are insufficient. *State v. Castaldi*, 386 S.W.2d 392, 395 (Mo.1965). Here, however, we have a combination of presence at the scene, an opportunity to commit the crime, flight, and possession of the recently stolen merchandise, all in one continuous chain of events. The combination of these facts distinguish *Allen* and *Castaldi*.

Several other cases involving passengers and stolen goods locked in automobile trunks are distinguishable from the case at bar primarily because the evidence adduced was insufficient to place the defendant at the scene of the crime.

In *People v. Malone*, 1 Ill.App.3d 860, 275 N.E.2d 236 (1971), the theft occurred prior to August 14, 1970, and the arrest occurred on August 27, 1970. The length of time creates a tenuous connection at best of defendant with the stolen merchandise.

In *People v. Evans*, 24 Ill.2d 11, 179 N.E.2d 657 (1962), the burglary occurred in St. Joseph, Illinois, while the automobile in which defendant was riding was stopped in Pekin, Illinois. There was no other evidence to place defendant at the scene. The court said that the defendant was not in possession of the items locked in the trunk where the evidence showed no more than

that defendant was riding in an automobile in which recently stolen property was found. 24 Ill.2d 11, 179 N.E.2d at 660.

State v. Andrade, 83 Ariz. 356, 321 P.2d 1021 (1958), involved the burglary of a residence between 2:00 p.m. and 10:15 p.m. Defendant and others were arrested in an automobile a mile and a half from the scene at 10:15 p.m. The automobile contained food taken from the burglarized residence which was still cold. One of the passengers had a still-bleeding cut and not yet dried blood was found at the scene of the burglary. The defendant was in a bar between 6:00 and 8:00 p.m. when he met the rest of the occupants of the automobile and left with them. The court held that absent "some evidence of the presence of all of them at the scene of the burglary or a conspiracy among them to commit the burglary" the facts failed to show joint possession. 83 Ariz. 356, 321 P.2d at 1022.

Finally, United States v. Mallory, 460 F.2d 243 (10th Cir. 1972), held the evidence insufficient to convict the defendant Watson of bank robbery where he was a passenger in an automobile in which the stolen money was found an hour and a half after the robbery. The evidence showed that the distinctive automobile in which Watson was a passenger was seen in the vicinity of the bank and that a black male with long sideburns was seen leaving the bank, which description Watson fit. The court found these facts to be inconclusive and held that the length of time between the crime and defendant's arrest created a reasonable doubt as to whether or not he actually participated in the crime.

The authorities cited above from other jurisdictions are factually different from the present case.

The court holds the evidence was sufficient to support the conviction. The judgment is affirmed.

MORGAN, C. J., and HENLEY, FINCH and RENDLEN, JJ., concur.

DONNELLY, J., dissents in separate dissenting opinion.

SEILER, J., dissents in separate dissenting opinion.

DONNELLY, Judge, dissenting.

In my opinion, the evidence adduced in this case is insufficient to support the judgment of conviction.

I respectfully dissent.

SEILER, Judge, dissenting.

I respectfully dissent, agreeing with the opinion expressed by Donnelly, J., in his dissent that the evidence in this case is insufficient to support the judgment of conviction. As my reasons therefor, I adopt the following portion of the opinion written by Flanigan, J., for the court of appeals, Springfield district, reversing the conviction and remanding the case.

On the point as to the insufficiency of the evidence to support the conviction Judge Flanigan said, omitting direct quotation marks:

"The presence of the accused at the place of the commission of a criminal offense may be considered along with other incriminating evidence to determine if the total circumstances raise a reasonable inference that the accused was a participant or an aider or abettor in the crime. . . . Evidence fairly showing any form of affirmative participation in a crime is sufficient to support a conviction . . . Even in cases where the evidence is wholly circumstantial, the evidence tending to support the verdict must be considered as true, contrary evidence must be disregarded, and every reasonable inference in support of the verdict must be indulged." State v. Cobb, 444 S.W.2d 408, 412 (Mo. banc 1969).

"Stolen property found in an automobile in which the defendant is a passenger near the scene of a burglary is admissible against the defendant at his trial for burglary without showing that the defendant had any interest in or right to possession of the automobile. . . . An inference of guilt is permissible from the unexplained possession of property recently stolen in a burglary and the inference exists both as to the offense of burglary and of stealing." Cobb, supra at 414.

"The possession of recently stolen property which will support an inference of guilt may be a joint possession of the accused and others and such possession need not be separated from all possession by others." *Cobb, supra* at 412. On the same page it is said: "The bulk and nature of stolen property has a bearing on the manner in which it may be possessed."

The evidence in the case at bar would support the following findings:

1. Between 2:03 and 2:48 a. m. on January 13, 1975, forcible entry to the dress shop was gained through the front door and 72 items of ladies' apparel were taken therefrom. The fact that "some quarters" were found lying on the floor after the discovery of the burglary would support the inference that the burglars (or burglar) were in haste.

2. At 2:49 a. m. a Pontiac automobile driven by one Riley and occupied by the defendant and another person made a hasty and suspicious departure from the vicinity of the dress shop.

3. The trunk of the Pontiac, which was locked, contained the stolen merchandise and some tools which could have been used to effect the entry.

The evidence, and the inferences therefrom, may be adequate to show that the defendant was in the vicinity of the dress shop when the offenses of burglary and larceny were committed, but the issue is, do they "fairly show any form of affirmative participation by the defendant in the crimes"? *Cobb, supra* at 412.

In *State v. Irby*, 423 S.W.2d 800, 803 (Mo.1968) it is said: "The most that can be said for the state's case is that it places defendant at the scene of the crime immediately prior thereto, in the company of one who apparently was directly implicated; that it demonstrates that defendant had an opportunity to participate in the commission of the crime and reveals him in very suspicious circumstances. This, however, is not enough to sustain the state's burden of establishing defendant's guilt, either as a principal or as an aider and abetter." If the words "prior thereto" be changed to "thereafter" that statement describes the facts at bar.

It is true that a person who aids and abets the commission of a criminal offense is guilty as a principal without a showing of conspiracy. *State v. Reed*, 453 S.W. 946, 948[1] (Mo.1970). It is also true that the presence of one at the commission of a felony by another is evidence to be considered in determining whether or not he was guilty of aiding and abetting and that presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred. *Reed, supra* at 948[2–6].

However, the mere presence of the accused at the scene of the crime, coupled with an opportunity on his part to have committed it, will not suffice to support a conviction. *State v. Allen*, 420 S.W.2d 330, 333[3] (Mo.1967). Also insufficient is the combination of presence at the scene and flight therefrom. *State v. Castaldi*, 386 S.W.2d 392, 395 (Mo.1965); *State v. Minor*, 531 S.W.2d 101, 102[2] (Mo.App.1975).

Here the evidence showed the presence of the defendant in the vicinity of the burglary during, or at least shortly after, its commission. Defendant was in the same vehicle with two other persons, one of whom was driving the vehicle in a suspicious manner. The vehicle contained the stolen merchandise. But whether defendant remained in the vehicle during the commission of the offense, aloof from their perpetration, or whether he actively participated therein remains open to speculation.

There is of course no direct evidence that the defendant participated in the burglary or the larceny. There is no showing whether the crimes were committed by only one person or by more than one person acting in concert. There was no showing that the burglary and larceny could not have been accomplished by one person acting alone.

Who forced open the door? Who took the stolen goods? Who placed them in the trunk? Who locked the truck? Who possessed the key to the trunk? Who was the owner of the Pontiac? These questions remain unanswered.

In support of its assertion that the evidence was sufficient to support the conviction, the state places its principal reliance upon *Cobb, supra.* In *Cobb* the court upheld the conviction of the defendant for burglary and stealing. A drug store was burglarized at night and several ("a number of") bottles containing prescription drugs were stolen. The police observed a Pontiac automobile leaving the vicinity of the drug store. The Pontiac was moving slowly with its lights off. As the police car approached, the Pontiac "accelerated and was driven rapidly from the parking lot. As it turned off on Limit Avenue the rear end 'fishtailed' and the car skidded into a ditch." The defendant was a passenger in the Pontiac, occupying the right front seat. The missing bottles were found on the floor behind the right front seat. The evidence showed that it was necessary to push the front seat forward in order to enter or leave the back seat.

Defendant Cobb testified that he was asleep in the back seat. The court pointed out that the jury did not believe "the defendant's story that he was asleep during the din that must have attended the breaking of the large window of the drug store with a 10-pound metal milk carrier approximately 20 feet from the automobile, the disturbance of depositing the stolen drugs in the rear portion of the [Pontiac], and the unusual movements of rapid acceleration, fishtailing, and skidding of the car."

In *Cobb* the court said at 414, "[w]e hold under all of the evidence and circumstances in this case that the defendant *jointly with others had actual and exclusive possession* of the merchandise stolen from the drug store." (emphasis added).

Although this case bears some factual resemblance to *Cobb, supra,* there are some dissimilarities which render Cobb non-controlling. In *Cobb* the stolen merchandise was found by the officers on the back floor behind the right front seat occupied by the defendant. The court pointed out that it was necessary to move the front seat, a "bucket seat," in order to gain access to that area. In view of the state of the stolen articles in *Cobb,* it is reasonable to infer that the defendant must have moved the seat to permit their placement in the vehicle or he must have been outside the vehicle when they were placed therein, either inference being inconsistent with Cobb's testimony.

Here, however, the stolen merchandise was in the *locked trunk* of the Pontiac driven by Riley. There is no showing that the defendant owned the Pontiac or that he had any type of interest in it. There is no showing that the defendant was ever in possession of the key to the trunk.

The dominion which Cobb had over the stolen merchandise and the extent to which he possessed it were greater than the dominion, if any, which this defendant had over the contents of the trunk.

In the following cases evidence that the defendant was present as a *passenger* in an automobile, the *locked trunk* of which contained recently stolen merchandise, was insufficient to implicate the passenger in the larceny thereof: *United States v. Mallory,* 460 F.2d 243 (C.A.10 1972); *People v. Malone,* 1 Ill.App.3d 860, 275 N.E.2d 236, 237[1] (1971); *People v. Evans,* 24 Ill.2d 11, 179 N.E.2d 657, 659[2, 3] (1962); *State v. Andrae,* 83 Ariz. 356, 321 P.2d 1021 (1958); Anno. 51 A.L.R.3d (Burglary—"Exclusive" Possession) § 15, p. 727.[1]

---

1. In *Commonwealth v. Franks,* 235 Pa.Super. 327, 340 A.2d 456 (1975), a burglary conviction was upheld by a divided court where defendant was a passenger in a speeding automobile found three blocks from a burglary within 30 minutes of its commission. The stolen merchandise was found in the trunk which was *open about a foot and a half.* There was also evidence that either defendant or one of his two companions dropped a watch which had been stolen in the burglary.

See also *Bury v. State,* 2 Md.App. 674, 236 A.2d 751 (1968) and *Hale v. State,* 5 Md.App. 205, 245 A.2d 908 (1968), in each of which defendant was a passenger in a vehicle seen at the scene, the locked trunk of which contained merchandise taken in a recent burglary. In each of these cases, however, there was evidence of active participation at the scene by the same *number* of people later found in the vehicle.

In drug possession cases a passenger in an automobile has been held not to be in possession of the contents of a locked trunk.[2]

Unlike the situation in *Cobb*, it may not properly be said, under the evidence here, that the defendant "jointly with others had actual and exclusive possession" of the merchandise.

In *Cobb* the defendant, at the trial,[3] told an unbelievable story with regard to his conduct at the scene. Here the defendant did not testify.

In *Cobb* there was evidence that the defendant and the other occupants of the vehicle had spent considerable time together on the day before the burglary and had done extensive traveling together, circumstances suggestive of collective enterprise. There is no evidence here concerning the prior association of the defendant with the other two occupants of the Pontiac.

So far as the instant record reflects it was at least possible that the defendant remained seated in the front seat throughout the commission of the offenses by one or both of his companions, doing nothing that constituted "consciously sharing" in the crime or "seeking by his action to make them succeed" or "associating himself with the venture in some fashion" or otherwise "affirmatively participating" therein, as re-

quired by *Irby, supra.* See also *State v. Miller*, 536 S.W.2d 524, 527[3–5] (Mo.App. 1976).

This court is not unmindful of the fact that the instant crimes were committed in the dead of night, in an area where no stores were open. It is speculative whether or not defendant was engaged in any legitimate enterprise at that time and in that place. It may well be that he was offering aid to the burglar or burglars. Indeed it may be that he *was* the burglar and the only one. But "a verdict based on suspicion, conjecture, or surmise, however strong, is not sufficient to permit a criminal conviction." *State v. Morse*, 515 S.W.2d 608, 610[5] (Mo.App.1974).

It was not incumbent upon the defendant to justify his presence or explain his conduct. On the state rested the burden to prove his guilt beyond a reasonable doubt and the evidence here fails to meet that standard.

---

Other cases upholding a burglary conviction where the defendant was a passenger in an automobile found near the scene of a recent burglary, where the stolen articles were found *inside* the vehicle as distinguished from being in its locked trunk, include *State v. Johnson*, 447 S.W.2d 285 (Mo.1969) and *State v. Miller*, 485 S.W.2d 435 (Mo.1972).

See also *State v. Ramsey*, 368 S.W.2d 413 (Mo.1963) and *United States v. McCall*, 148 U.S.App.D.C. 444, 460 F.2d 952 (1972).

2. In *Corrao v. State*, 154 Ind.App. 525, 290 N.E.2d 484 (1972), passengers in an automobile were held not to be in possession of marijuana found in the trunk although the driver was held to be in possession of it as was another passenger who owned the automobile. To similar effect see *Montoya v. United States*, 402 F.2d 847 (5 Cir., 1968), *Bettis v. United States*, 408 F.2d 563 (1969), and *People v. Mosley*, 131 Ill.App.2d 722, 265 N.E. 889, 890[3] (1971); Anno. 57 A.L.R.3d 1319 (Illicit Drugs—Possession by Car Occupant).

3. In *State v. Miller*, 536 S.W.2d 524 (Mo.App. 1976) evidence was held insufficient to support a conviction for burglary and larceny where it was shown that the defendant was on the premises the day before the burglary occurred and he was arrested five days later 100–120 miles from the scene of the burglary riding as a passenger in a vehicle in which some of the stolen merchandise was found. The court pointed out that the defendant "made no incriminating statement connecting him with the crimes; *no contradictory statements* to the officers; . . ."

In *State v. Enochs*, 339 Mo. 953, 98 S.W.2d 685, 687 (1936) the court, referring to a statement made by the defendant to police officers, said: "This statement was false and therefore incriminating for if the *facts* were consistent with appellant's innocence he need not have lied about them." (emphasis in original).